[No. 40329.    Department Two.    May 1, 1969.]

THE STATE OF WASHINGTON, *Respondent,* v. WILLIAM THOMAS, *Appellant.**

*James S. Hogan,* for appellant (appointed counsel for appeal).

*Lincoln E. Shropshire* and *Donald R. Shaw,* for respondent.

PER CURIAM.—Defendant was arrested January 2, 1968, during a police raid which was televised and broadcast over two television stations serving the Yakima Valley. This is the same raid adequately described in *State v. Valenzuela,* ante p. 876, 454 P.2d 199 (1969); and *State v. Malone, ante* p. 612, 452 P.2d 963 (1969). Defendant's motion for a change of venue was denied January 26, 1968. He was subsequently convicted on two counts of unlawful sale of narcotics.

Defendant assigns error to the failure to grant his motion for change of venue. We find nothing in the record to differentiate this case from *Valenzuela* and *Malone,* where the same issue was raised. Public sentiment against

*Reported in 454 P.2d 202.

the defendant had not been aroused to the extent that a fair trial could not be held in Yakima. The trial court did not abuse its discretion in denying the motion.

Defendant also assigns error to the trial court's admission, over objection, of testimony by a United States Treasury Department chemist that the results of microscopic and chemical tests showed that certain exhibits contained marijuana. Defendant's objection appears to be that there was insufficient foundation to establish the chemical compounds used as reagents in the chemical test. Testimony similar to this has been held to support a prima facie case for the state in *State v. Garcia,* 69 Wn.2d 546, 419 P.2d 121 (1966); *State v. Mudge,* 69 Wn.2d 861, 420 P.2d 863 (1966); and *State v. Montague,* 73 Wn.2d 381, 438 P.2d 571 (1968). However, the precise issue of the foundation required for admission of this testimony was not considered in those cases.

■ The chemist testified that he performed the chemical test (commonly called the Duquenois test) as follows:

Q. How is the Duquenois test performed, Mr. Gowans? A. Well, a small amount of the material is placed in the bottom of the test tube, 100 to 200 milligrams, and about 2 ccs of this Duquenois reagent. It's a liquid that's added and the material allowed to mix with the suspected material for a minute or so and then an equal volume of hydrochloric acid is added, and the appearance of a purple color indicates the presence of marihuana. Finally, I added an equal volume of chloroform and upon shaking the purple color that was originally in the solution will appear in the bottom of the chloroform layer of the solution.

No question is raised as to the qualifications of the witness. Although not cited by the defendant in his brief, at oral argument he relied on *State v. Baker,* 56 Wn.2d 846, 854, 355 P.2d 806 (1960), for his position. It is obvious that only test No. 2 discussed in *Baker, i.e.,* "that the chemicals therein were of the correct kind and compounded in the proper proportions" could be applicable here. However, the chemist witness was fully cross-examined on this point. His

answers adequately met the test and the result of the test meets all the requirements for prima facie proof that the substance was marijuana.

Judgment affirmed.

June 25, 1969. Petition for rehearing denied.